McKEEVER v GALESBURG SPEEDWAY, INC.

1. Negligence—Comparative Negligence.

Michigan does not recognize the doctrine of comparative negligence.

2. Negligence—Gross Negligence—Subsequent Negligence.

Michigan courts have equated gross negligence with subsequent negligence, but it is clear that Michigan recognizes a separate doctrine of gross negligence.

3. Negligence—Gross Negligence—Ordinary Negligence.

Gross negligence is not viewed as a higher degree of negligence, but does include the factors of ordinary negligence plus a wilful and wanton disregard for public safety.

4. Negligence—Gross Negligence—Subsequent Negligence.

Gross negligence, although it has been equated with subsequent negligence, is a separate doctrine, the essence of which is a reckless disregard for the safety of others.

5. Pleading—Negligence—Amendment of Pleadings—Prejudice—Court Rule.

A trial judge properly refused to allow a plaintiff to amend her pleadings in a suit for negligence to include wilful and wanton misconduct on the part of the defendant where the plaintiff's request to amend to conform to her proofs was made at the trial, and she made no attempt to satisfy the court that her amendment would cause no prejudice to the defendant (GCR 1963, 118.3).

6. Pleading—Amendment of Pleadings—Negligence—Gross Negligence—Prejudice.

A plaintiff was properly refused, after trial had commenced, an opportunity to amend her pleadings of "negligence" and "gross,

REFERENCES FOR POINTS IN HEADNOTES
[1] 57 Am Jur 2d, Negligence § 426 et seq.
[2–4] 57 Am Jur 2d, Negligence §§ 99, 100, 438.
[5, 6] 61 Am Jur 2d, Pleading § 322.
[6] 57 Am Jur 2d, Negligence §§ 305, 312.

wilful and wanton negligence" to conform to her theory that the defendant was guilty of "gross negligence and wilful, wanton, reckless, intentional conduct" because of the potential prejudice of a delay and because such an amendment would have deprived the defendant of its primary defense of plaintiff's contributory negligence.

Appeal from Kalamazoo, Donald T. Anderson, J. Submitted Division 3 October 9, 1974, at Grand Rapids. (Docket No. 19104.) Decided November 27, 1974. Leave to appeal applied for.

Complaint by Marilyn McKeever, administratrix of the estate of Jerry Mack Woody, deceased, against Galesburg Speedway, Inc., for damages for negligence, and against Interstate Fire & Casualty Company for damages for breach of an insuring agreement. The Regents of the University of Michigan intervened as party plaintiff against Interstate Fire & Casualty Company only. Judgment for both plaintiffs as to defendant Interstate Fire & Casualty Company. Judgment of no cause of action in favor of Galesburg Speedway, Inc. Plaintiff McKeever appeals. Affirmed.

*Sloan & McCarthy,* for plaintiff Marilyn McKeever.

*Allen, Worth & Hatch,* for defendant Galesburg Speedway, Inc.

Before: ALLEN, P. J., and J. H. GILLIS and McGREGOR, JJ.

J. H. GILLIS, J. On August 17, 1969, plaintiff's decedent, Jerry Mack Woody, was killed during an auto accident at the Galesburg Speedway. Plaintiff sued the race track, alleging nine counts of "negli-

gence" and one count of "gross, wilful and wanton negligence".[1]

In his opening statement to the jury, plaintiff's attorney indicated that the theory of her entire case would be that defendant was guilty of "gross negligence and wilful, wanton, reckless, intentional conduct". Out of the jury's presence, defendant protested that plaintiff's statements to the jury must conform with those laid out in her pleadings. The trial judge agreed, and ordered plaintiff to proceed on a simple negligence theory, except insofar as his one allegation of "gross, wilful and wanton negligence".[2] At that point, plaintiff sought leave of the court to amend her pleadings. Leave being denied, plaintiff refused to offer proofs on any of the counts of simple negligence or on the count involving "gross, wilful and wanton negligence". The judge then ordered the jury to return a verdict of no cause of action. Plaintiff appealed, and we affirm.

Gross negligence means different things in different jurisdictions. The term is normally used in a comparative sense, to connote great negligence or lack of even scant care.[3] In Michigan, "gross negligence" is not referred to "in the sense of great or much negligence",[4] because our jurisdiction does not recognize the doctrine of comparative negligence. *Union Trust Co v Detroit, G H & M R Co,* 239 Mich 97, 100; 214 NW 166, 167–168 (1927). At times, "gross negligence" has been used to describe what is more properly known as subse-

---

[1] The gross negligence count alleged the Speedway's failure to provide adequate fire fighting equipment.

[2] Plaintiff argues that this one allegation sufficed to alert defendant that the theory of his whole case would be one of gross negligence. We find no merit to this argument.

[3] See Prosser, Torts (3d Ed) § 34, pp 183–187.

[4] See Morris, *Gross Negligence in Michigan—How Gross Is It?* 16 Wayne L R, 457 (1970).

quent negligence or the doctrine of last clear chance. *LaCroix v Grand Trunk W R Co,* 379 Mich 417, 423; 152 NW2d 656, 658 (1967), quoting from *Gibbard v Cursan,* 225 Mich 311, 318–321; 196 NW 398, 401 (1923), discussed the theory of gross negligence in terms synonymous with those of subsequent negligence. However, the Court in *Gibbard, supra,* noted that although subsequent negligence had at times been labeled "gross negligence", there were distinctions between the two types of behavior, and in fact said that while subsequent negligence was inapplicable to the facts at hand, there was evidence from which the jury could find that defendants had acted in a wilful, wanton, and reckless fashion. 225 Mich 311, 322–323; 196 NW 398, 401–402.

Although Michigan courts have equated "gross negligence" with "subsequent negligence", it is clear that Michigan recognizes a separate doctrine of "gross negligence". According to *Denman v Johnston,* 85 Mich 387, 396; 48 NW 565, 567 (1891), gross negligence:

" * * * means an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another. It also implies a thoughtless disregard of consequences, without the exertion of any effort to avoid them."

While gross negligence is not viewed as a higher degree of negligence, it does include the factors of ordinary negligence plus "a wilful and wanton disregard for public safety". *Wieczorek v Merskin,* 308 Mich 145, 149; 13 NW2d 239, 240 (1944). The definition of gross negligence has most recently been recognized in *York v James,* 46 Mich App 498, 501; 208 NW2d 185, 187 (1973).

*Nass v Mossner,* 363 Mich 128, 133; 108 NW2d

881, 883 (1961), said that gross negligence should not be limited to the relatively "simple situation of subsequent negligence", that the essence of the doctrine of gross negligence "is a reckless disregard of the safety of another". The jury instructions for each doctrine differ, with MSJI 14.01 dealing with the doctrine of subsequent negligence and MSJI 14.02 being concerned with wilful and wanton misconduct, which as we have seen above has been called gross negligence. According to MSJI 14.01, Comment, the conduct of defendant in the subsequent negligent situation "need only be ordinary negligence". Gross negligence includes ordinary negligence, but contains additional elements, as seen in *Wieczorek v Merskin, supra.* Having hopefully clarified the meaning of gross negligence, we now turn to whether the trial judge correctly refused to allow plaintiff to amend her pleadings.

We hold that the trial judge correctly refused to allow amendment to include "wilful and wanton" misconduct on defendants' part. GCR 1963, 118.3, states that:

"If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, *amendment to conform to such proof shall not be allowed unless the party desiring amendment satisfies the court that the amendment and the admission of such evidence would not prejudice the objecting party* in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence." (Emphasis supplied.)

Plaintiff made no attempt to satisfy the court that her amendment would cause no prejudice.

We think that to have allowed this amendment after the trial had commenced would have been

severely prejudicial to defendants. First, another delay would have been required. *Ben P. Fyke & Sons v Gunter Co,* 390 Mich 649, 663; 213 NW2d 134, 140 (1973), recognized the potential prejudice in such a situation:

"Delay by a moving party in offering an amendment can be a major source of prejudice to the opposing party. Witnesses may die. Evidentiary material may be lost or destroyed. Unnecessary expense may be incurred during the pretrial proceedings. *The litigation may proceed to a point where the opposing party cannot reasonably be expected to defend against the amendment; this is an especially pertinent factor on the eve of, during, or after trial."* (Emphasis supplied.)

Second, such an amendment would have deprived Speedway of its primary defense—plaintiff's contributory negligence. As the Court in *Gibbard v Cursan,* 225 Mich 311, 320–321; 196 NW 398, 401 (1923), stated:

"If one wilfully injures another, or if his conduct in doing the injury is so wanton or reckless that it amounts to the same thing, he is guilty of more than negligence. The act is characterized by wilfulness, rather than by inadvertence, it transcends negligence— is different in kind. *Where recovery is sought on the theory that the injury was caused by wilful, wanton or reckless misconduct of a defendant, as distinguished from negligence, there is no more reason for permitting the defense of contributory negligence than in a case of assault and battery."* (Emphasis supplied.)

Affirmed. Costs to appellees.
All concurred.